**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td><strong>ROGER SCHLOSSBERG,</strong></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td><strong>Plaintiff,</strong></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td><strong>v.</strong></td><td>*</td><td><strong>Civil Action No.: GJH-13-3076</strong></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td><strong>BF SAUL INSURANCE AGENCY OF</strong></td><td>*</td><td></td></tr>
<tr><td><strong>MD., INC., et al.,</strong></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td><strong>Defendants.</strong></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

******

## MEMORANDUM OPINION

Before this Court are Plaintiff's Motion for Protection from Further Discovery Related to Mariana Bravo (ECF No. 40) (the "Motion for Protective Order") and Defendants' Motion to Compel (ECF No. 41-1) (the "Motion to Compel"). The Court has reviewed the motions, related memoranda, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court **GRANTS** and **DENIES** in part the Motion for Protective Order, and **GRANTS** and **DENIES** in part the Motion to Compel.

## I.    Factual Background

Roger Schlossberg ("Plaintiff") is the bankruptcy trustee for DTM Corporations ("DTM"). Prior to filing for bankruptcy, DTM provided security guards to government facilities owned by the Department of Defense ("DoD"). DTM hired David Schwarz and B.F. Saul Insurance Agency of Md., Inc., (collectively "Defendants") to secure general liability and excess coverage insurance for its operations. Defendants secured multiple insurance policies from Arch

Specialty Insurance Company ("Arch"), including excess policies which did not provide coverage for losses stemming from the monitoring of alarm systems.

On January 5, 2009, high temperatures in DoD's Fort Washington facility damaged DoD computer systems.  DoD claimed DTM guards failed to respond to a heat alarm system and sued DTM for $3,600,000.  DTM requested that Arch cover the damages.  Arch covered $1,000,000 of damages under the general commercial liability policy, but cited the alarm systems exclusion in the excess policy in refusing to cover the remaining damages.  At the behest of Arch, Brownyard Claims Management, Inc. ("Brownyard"), provided litigation management services for DTM and employed Mariana Bravo of Carr Maloney PLLC as counsel for DTM.  Ms. Bravo hired Roger Nebel to provide expert opinions regarding causes of the damage to DoD's computers.

DTM contends that as its major source of income, DoD had the ability to cripple its operations should DTM fail to make timely payments on DoD's losses.  As a result, DTM was led to file bankruptcy on August 22, 2011.  Eventually, DoD and Arch engaged in a mediation which led to the settlement of DoD's claims for $500,000 prior to the filing of a lawsuit.  The general commercial liability policy provided $1,000,000 of coverage.

Plaintiff now alleges that Defendants negligently failed to secure adequate insurance coverage and negligently failed to explain the relevant differences in coverages between the various policies.  Plaintiff contents that these failures resulted in DTM's financial demise.

Defendants made the following requests for documents that are at issue here:

Request No. 2:    All documents in the files maintained by the law firm Carr Maloney, P.C. in connection with its representation of DTM Corporation, including but not limited to its File No. 27311DC001.

Request No. 3:    All documents referred to in the letter dated June 24, 2011 from Mariana D. Bravo to Richard D. Randazzo.

> Request No. 11:    All documents reviewed or created by Roger Nebel in connection with his
> investigation in connection with the DoD claim.

Mem. in Supp. of Mot. to Compel 2-3.  Defendants also seek to depose Ms. Bravo regarding the

arguments and facts raised during the settlement negotiations.  While Defendants note that

Plaintiff has provided a summary of the substantive arguments raised during the settlement

conference, they maintain that this summary does not provide all discoverable information.

Defendants argue that these documents and information were never privileged; that

Plaintiff or DTM waived any privilege; and that even if some documents and information are

still privileged, this Court should grant Defendants access to this information because

Defendants cannot obtain it from other sources and have a substantial need for it that outweighs

any privileges.

Plaintiff argues that he has provided all non-privileged information and that the other

documents requested and information sought in a potential deposition with Ms. Bravo is

protected by the work-product doctrine, and by attorney-client privileges that extend to Plaintiff

by way of the common-interest doctrine.[1]  Plaintiff specifically notes that he has provided all of

the exhibits referenced in the letter dated June 24, 2011 from Mariana D. Bravo to Richard D.

Randazzo (hereinafter the "Initial Litigation Analysis") with the exception of an "October 7,

2010 letter from Roger Nebel . . . to Richard Randazzo . . . in which Mr. Nebel discusses his

investigation and findings in support of DTM's defense of the DoD claim."  Mem. in Supp. of

Mot. for Prot. Order 15 n. 8.  In addition, Plaintiff argues that the information sought by

---

[1] The Court realizes that the work-product doctrine is not a true privilege, and that instead work product is divided into two.  "[M]ental impressions, conclusions, opinions, or legal theories concerning the litigation" are "absolutely immune" and "all other documents and tangible things prepared in anticipation of litigation" are "only qualifiedly immune"  and "may be discovered . . . on a showing of substantial need."  *Nat'l Union Fire Ins. of Pitt., PA v. Murray Sheet Metal Co.*, 967 F.2d 980, 983-84 (4th Cir. 1992) (citations omitted).  For ease of discussion, the Court will use the word "privilege" to discuss both the work-product doctrine and the attorney-client privilege.

deposing Ms. Bravo is available without a breach of these privileges via a deposition of Mr. Randazzo.

## II.      Legal Background

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the . . . custody . . . of any [relevant] documents." Fed. R. Civ. P. 26(b)(1).  Relevant information is that which "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

This Court has previously held that "the Fourth Circuit has not imposed a settlement privilege with respect to discovery" and instead "courts in this circuit have found that relevance not admissibility, is the appropriate inquiry with regard to whether or not the information sought is discoverable." *Nat'l Union Fire Ins. of Pittsburgh, PA v. Porter Hayden Co.*, No. CCB-03-3408, 2012 WL 628493, at *3 (D. Md. Feb. 24, 2010) (hereinafter *Porter*).  Plaintiff has not withheld documents or information on the basis of a "settlement privilege."  Mem. in Supp. of Mot. for Prot. Order 19.

However, communications between attorneys and their clients are entitled to protection from discovery when:

> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;
> (3) the communication relates to a fact to which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and
> (4) the privilege has been (a) claimed and (b) not waived by the client.

*Flo Pac, LLC, v. NuTech LLC*, No. WDQ–09–510, 2010 WL 5125447, at *4 (D. Md. Dec. 9, 2010) (citing *U.S. v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)).  This attorney-client privilege

can extend to communications that are between parties who "share[] an identical legal interest" and are "made in the course of and in furtherance of the joint legal effort" so long as "the privilege has not been waived." *Prowess, Inc. v. RaySearch Labs. AB*, No. WDQ-11-1357, 2013 WL 1976077, at *2 (D. Md. May 9, 2013).

The attorney-client privilege can be waived in two ways.  First, under the Federal Rules of Evidence, if a party discloses privileged information "in a federal proceeding," the party waives its privilege related to that disclosed information and as to undisclosed information that "concern[s] the same subject matter" so long as "the waiver [was] intentional" and the disclosed and undisclosed information concerning the same subject matter "ought in fairness to be considered together."  Fed. R. Evid. 502(a); *see also Richardson v. Sexual Assault / Spouse Abuse Res. Ctr., Inc.*, 764 F. Supp. 2d 736, 744 (D. Md. 2011) (holding that fairness did not require a full subject matter disclosure where there was no evidence that the disclosed documents were selectively disclosed or would mislead).  Secondly, a privilege may be waived by an affirmative act that "put[s] the protected information at issue by making it relevant to the case" and "application of the privilege would . . . deny the opposing party access to information vital to his defense." *Parler & Wobbler v. Miles & Stockbridge*, 756 A.2d 526, 542 (Md. 2000).

In addition, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . . insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  A party may discover work-product if "the party [seeking discovery] shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).

Generally, to withhold materials requested in discovery by way of a claim of privilege, a party must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).  In addition, a motion for a protective order against discovery "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."  Fed. R. Civ. P. 26(c)(1).

## III. Discussion

### a. All of the information Defendants seek is relevant.

Plaintiff argues first that the information Defendants request is not discoverable because it is not relevant.  Under the Federal Rules of Evidence, relevant information is that which "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Moreover, information from settlement negotiations may be discovered so long as it is relevant. *Porter* at *3.  The files related to Carr Maloney's representation of DTM, documents reviewed or prepared by Mr. Nebel, and exhibits referenced in the Initial Litigation Analysis could reasonably lead to the discovery of admissible evidence regarding the damages claimed by DoD.  They are therefore relevant to damages claimed by DTM for any negligence related to the selection of an inappropriate insurance policy.  The arguments and facts raised during the settlement negotiations between DoD and Arch similarly relate to the damages claimed by DoD and/or DTM.[2]

---

[2] The Court notes that Plaintiff has agreed to produce "all information upon which [Ms. Bravo] relied to defend DTM from the DoD claim and in negotiating and ultimately achieving settlement of that claim."  Pl.'s Opp'n to Mot. to Compel 6.  Equally, Plaintiff has agreed to produce "all documents and information provided to Mr. Nebel and upon which Mr. Nebel relied to formulate any opinions in support of DTM's defense."  *Id.* at 10.

### b. *Plaintiff has claimed his privilege in a procedurally sound manner.*

While the information Defendants seek is relevant, it may be protected from discovery if it is privileged.  In the Fourth Circuit, "[a] party asserting privilege has the burden of demonstrating its applicability."  *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011).  Procedurally, the party must "expressly make the claim" and "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  Such compilations are commonly known as privilege logs.  Under the Local Rules, these logs should "identify with specificity the nature of the privilege . . . that is being claimed."  Local Rules, App. A, Guideline 10 (D. Md. 2014).  If the claim relates to a document, the asserting party should describe "the type," "general subject matter," and "date" of the document.  *Id.*  They should also describe "such other information as is sufficient to identify the document."  *Id.*

Plaintiff has satisfied both the Federal Rules of Civil Procedure and the Local Rules of this Court.[3]  First, his assertions of privilege are supported by a privilege log which provides a descriptive listing of each of the 470 documents that Plaintiff believes are protected, indicates which privileges he believes apply, and describes each document sufficiently for it to be identified.  Mot. for Prot. Order, Ex. 3.  This satisfies Plaintiff's obligation to "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  It also satisfies Plaintiff's obligation to identify "the nature of the privilege . . . claimed" and provide

---

[3] Before making any discovery motion, a party must make a sincere attempt to resolve the discovery dispute and file a certificate "reciting (a) the date, time and place of the discovery conference, and the names of all persons participating therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court."  Local Rule 104.7 (D. Md. 2014).  Plaintiff's counsel attests that he met with Defendants' counsel on October 15, 2014, to discuss and attempt to resolve the discovery dispute.  Am. Local Rule 104.7 Certificate (ECF No. 52).  This satisfies Plaintiff's obligation to recite the date, time, and place of a discovery conference.  Local Rule 104.7 (D. Md. 2014).  Plaintiff also provides "an itemization of the issues requiring resolution by the Court" in his Motion for Protective Order.  *Id.*

information needed to identify the documents.  Local Rules, App. A, Guideline 10

(D. Md. 2014).

### c. *Plaintiff has not demonstrated that communications from DTM to Ms. Bravo are protected by the attorney-client privilege.*

In order to be from protected discovery, a party must make a substantive showing that the

information sought is privileged.  *Interbake*, 637 F.3d at 501.  The party must show that:

> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made (a) is a member of the bar of a court, or is his subordinate and (b) in connection with this communication is acting as a lawyer;
> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and
> (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* at 501-02.  Plaintiff asserts that all of the requested documents and information that have not

been produced are protected by the attorney-client privilege.  Plaintiff may assert DTM's

privileges.  *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 358 (1986)

(holding that the bankruptcy trustee of a corporation has power over the corporation's "attorney-

client privilege with respect to prebankruptcy communications," including the power to waive

that privilege).

Plaintiff asserts that divulging the files maintained by Carr Maloney related to its

representation of DTM may reveal communications by DTM to Ms. Bravo leading up to the

DoD settlement that are protected by the attorney-client privilege.  These communications satisfy

the first two elements of the test above—DTM was a client of Ms. Bravo's, Ms. Bravo was a

member of the bar, and Ms. Bravo acted as a lawyer to DTM.  However, it is unclear whether the

documents withheld relate to facts about which Ms. Bravo was made aware by DTM without the presence of strangers and for the purpose of securing a legal opinion or legal service.

Neither the documents created by Mr. Nebel nor the exhibits referenced in the Initial Litigation Analysis are protected by the attorney-client privilege because they do not include facts expressed by DTM to Ms. Bravo and thus cannot satisfy the third element of the test.

Plaintiff is ordered to indicate in an affidavit whether how any withheld documents relate to facts about which Ms. Bravo was made aware by DTM without the presence of strangers and whether it was made for the purposes of securing a legal opinion or legal service. Specificity and detailed explanations will be required. Mere boilerplate language will be viewed as a waiver of this opportunity to supplement Plaintiff's position.

### d. *Plaintiff has not demonstrated that the documents created by DTM, Ms. Bravo, or Mr. Nebel are work-product or relate to the thoughts and impressions of Ms. Bravo.*

Plaintiff claims that the information Defendants seek is protected by the work-product privilege. Under the Federal Rules of Civil Procedure, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" "including the other party's attorney" or "insurer." Fed. R. Civ. P. 26(b)(3)(A). The Fourth Circuit has distinguished fact and opinion work-product, noting that while "[f]act work product is discoverable only upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship[,] . . . [o]pinion work product is even more carefully protected, since it represents the thoughts and impressions of the attorney." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999) (citations omitted). As such "opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Id.* (citations omitted). Opinions and documents created in anticipation of litigation by an expert are

discoverable upon "showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D).

The files kept by Carr Maloney, the letter sent from Mr. Nebel to Mr. Randazzo, and any other documents created by Mr. Nebel are work-product to the extent that they were "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A). Plaintiff is therefore ordered to provide an affidavit indicating which documents contain fact and/or opinion work-product and to provide all such documents to this Court for an *in-camera* review. Of interest is the view of the parties regarding the opinions expressed by Mr. Nebel in his letter of October 7, 2010, to Mr. Randazzo. Defendants suggest that these opinions were provided to others during the mediation. If so, this letter no longer enjoys work-product protection and is to be produced. If the parties disagree, please advise the Court and a hearing will be scheduled.

### e. *The common-interest doctrine extends all privileges to Plaintiff*

This Court has previously explained that for communications "[t]o be protected under [the common interest] privilege" they "must first satisfy the traditional requisites for the attorney-client or work product privilege." *Prowess*, 2013 WL 1976077, at *2 (citing *Glynn v. EDO Corp.*, No. JFM-07-01660, 2010 WL 3294347, at *7 (D. Md. Aug. 20, 2010)). Once the elements of the attorney-client privilege and/or work product protection are established, "the proponent must also demonstrate the common interest elements, namely that (1) the communicating parties shared an identical legal interest, (2) the communication was made in the course of and in furtherance of the joint legal effort, and (3) the privilege had not been waived." *Prowess,* 2013 WL 1976077, at *2 (citations omitted).

Plaintiff argues that "all communications between [DTM], as the insured, Arch/Brownyard, as the insurer providing a defense to [DTM], and the office of Mariana Bravo, as the Arch-assigned defense counsel for DTM, are protected by the attorney-client privilege and/or work-product doctrine via the common-interest privilege." Mot. for Prot. Order 11. Regarding the first element of the test above, DTM, Arch, and Ms. Bravo were engaged in the joint legal effort of defending DTM against the DoD claim. Plaintiff stands in the shoes of DTM for all purposes. Regarding the second element, any communications by DTM to Ms. Bravo protected by the attorney-client privilege were made in the furtherance of this legal effort. Similarly, any documents created or mental impressions held by DTM, Ms. Bravo, or Mr. Nebel in anticipation of litigation would be protected by the work-product privilege and would be related to the furtherance of the joint legal effort. Finally, as discussed later, Plaintiff has demonstrated that these privileges have not been waived. As such, the attorney-client and work-product protections enjoyed by DTM, Arch, Brownyard, and Ms. Bravo extend to Plaintiff.

### f. Plaintiff did not waive any privileges.

Defendants argue that waiver occurred either when Mr. Randazzo disclosed the Initial Litigation Analysis to Defendants or when Plaintiff sued Defendants and placed privileged communications at issue.

### 1. Mr. Randazzo's transmission of Ms. Bravo's litigation analysis does not waive Plaintiff's privileges.

The Fourth Circuit has held that "the proponent of the attorney-client and work-product privileges . . . has the burden of establishing that he has not waived them." *Wells v. Liddy*, 37 Fed. Appx. 53, 65 (4th Cir. 2002). This Court has previous held that "waiver occurs when a privileged communication is disclosed to a third party at a later date." *Richardson*, 764 F. Supp. 2d at 744. Typically, such a disclosure waives the privilege related only to the document

disclosed.  Such a waiver may apply to undisclosed information as well if the disclosure is made

"in a federal proceeding," "the waiver is intentional," "the disclosed and undisclosed

communications or information concern the same subject matter" and ""they ought in fairness to

be considered together."  Fed. R. Evid. 502(a).  However, when a privilege stems from the

common interest doctrine, this Court has held that "[t]he privilege only can be waived by

'consent of all parties who share the privilege.'"  *Elat v. Nguobene*, No. PWG-11-2931, 2013

WL 4478190, at *3 (D. Md. 2013) (citing *In Re Grand Jury Subpoenas, 89-3 and 89-4, John

Doe 89-129*, 902 F.2d 244, 248 (4th Cir. 1990)).  The attorney-client privilege typically can only

be waived by the client.  *See U.S. v. Jones*, 696 F.2d at 1072 (holding that "the privilege applies

only if" it has "not [been] waived by the client" (citations omitted)).

        In this case, Mr. Randazzo, in his capacity with Brownyard, transmitted Ms. Bravo's

litigation analysis to Defendants.  DTM was not involved in this transfer.  As such, neither DTM

nor Plaintiff consented to any waiver of the attorney-client and work-product privileges that

would flow from the transmission of the Initial Litigation Analysis.

### 2.  *Plaintiff has not waived these privileges via an affirmative act.*

        Defendants argue further that they should be able to depose Ms. Bravo because Plaintiff

has waived Ms. Bravo's attorney-client privilege by "seeking to recover damages arising out of

the Arch Insurance Company's denial of excess coverage on the DoD claim" and subsequently

placing "privileged communications relating to the merits and settlement value of the DoD claim

at issue."  Mot. to Compel 9.  This Court has previously held that privileges may be waived by

an affirmative act that "put[s] the protected information at issue by making it relevant to the

case" when the "application of the privilege would . . . deny the opposing party access to

information vital to his defense."  *Parler*, 756 A.2d at 542.

The *Parler* court held that a client affects waiver when he or she "asserts a claim against counsel of ineffective assistance and those communications, and the opinions based upon them[,] are relevant to the determination of the quality of counsel's performance" and are "necessary to the defense." *Parler*, 756 A.2d at 537.   The court extended the "implied waiver rule more broadly to attorney-client privileged communications between the client and successor counsel when the client, by claiming malpractice or negligence against former counsel, has injected an issue that also implicates successor counsel's negligence in the same manner." *Id.* at 538.   These "waiver rules are based, in part, on the premise that the client cannot use the advice of a professional as a sword to prove the client's case against former counsel while at the same time asserting the privilege as a shield to prevent disclosing harmful information." *Id.*

In *Parler*, the plaintiff argued that its former counselor had been negligent in allowing the case to default and that this negligence forced the plaintiff to settle the case.   The defendant was able to pierce the veil of the attorney-client privilege in order to assess whether the successor counselor's performance, and not their own, was the true cause of the settlement and ultimate settlement amount.   Here, in contrast, Plaintiff alleges that Defendants negligently selected an insurance policy that inadequately protected DTM from liability.   The quality of Ms. Bravo's representation does not bear on the core issue of whether Defendants were negligent—that is to say—Plaintiff has not "injected an issue that also implicates . . . counsel's negligence in the same manner." *Id*.   Moreover, Ms. Bravo's legal advice is not being used "as a sword" to prove Defendants' negligence while at the same time "as a shield" to prevent the disclosure of harmful information. *Id.*   Plaintiff's suit against Defendants does not put at issue the communications by DTM to Ms. Bravo related to the DoD settlement; documents developed by DTM, Ms. Bravo, or

Mr. Nebel in anticipation of litigation against DoD; or the thoughts and impressions of Ms.

Bravo related to her representation of DTM.  As such, Plaintiff has not waived these privileges.

### g. *Defendants have demonstrated a substantial need and inability to otherwise obtain some of Ms. Bravo's work-product.*

Under the Federal Rules of Civil Procedure, a party may discover fact work-product

privileged materials if the materials are 1) "otherwise discoverable"—or "reasonably calculated

to lead to the discovery of admissible evidence"—and "the party [seeking discovery] shows"

2) "that it has substantial need for the materials to prepare its case" and 3) "cannot, without

undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)-

(B).   With regard to the third element, Defendants argue that they cannot obtain privileged

information by other means because DTM is defunct and DoD is beyond the subpoena power of

the Court.[4]  Plaintiff retorts that the information can be acquired by deposing Mr. Randazzo.

At the outset, it should be noted that it is unclear whether DoD has responded to

Defendants' requests.  This Order is premised on the assumption that DoD has not.  Defendants

are ordered to supplement their Motion to Compel within fourteen days and indicate whether

DoD has replied to these requests.  If DoD has responded, this Court will reassess whether the

discovery discussed below is still required.

Turning to the test stated in the Federal Rules, with regard to the first element

(relevance), as noted previously, I find that the information Defendants seek by deposing Ms.

Bravo is relevant.  As to the second element (substantial need) I also find Defendants have a

substantial need for this information to prepare their defense.  The "substance of any response by

DoD to the arguments raised by DTM" is reasonably calculated to discern whether DTM should

---

[4] *See COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999) (holding that "[w]hen an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources" and is entitled to deference by the court).

have settled for the amount it now claims as part of its damages. **Mem. in Opp'n to Mot. for Prot. Order 14.** The same goes for "[w]hether the DoD received any communications other than the Shift Report concerning the new procedure for reporting high temperature alarms." *Id.* While Plaintiff has provided documents DoD received related to a new alarm reporting procedure, these documents do not indicate whether DoD expressed, in the settlement conference, that it believed DTM was not providing immediate notifications. Any statements by DoD illustrating their beliefs on this topic are not shielded from discovery by any privilege and are relevant to the settlement sums reached between DoD and Arch. Equally so with regard to "[t]he factual basis supporting the argument that the DoD would not have responded even if it had been immediately notified of the heat alarm" and "for DTM's causation argument." *Id.* If DTM reasonably believed that DoD would not respond to an alarm, DTM's failure to report the alarm may not have been the proximate cause of DoD's damages. The same is true regarding "[t]he factual basis for DTM's argument [that] the electrical wiring of the computer room" contributed to the damage sustained by DoD's computers. *Id.* If an unusual configuration led to the computers sustaining more damage, theoretically DTM would have owed less in damages.

Defendants also have a substantial need for "[t]he substance of any arguments raised by DTM that were not summarized in the Mediation Statement" as they bear directly on whether DTM could have settled for less than they did. *Id.* So too with "DTM's efforts to investigate the facts underlying the DoD claim and the damages alleged." *Id.* at 15. While Plaintiff has provided Defendants with the identities of individuals Ms. Bravo interviewed, it has not provided Defendants with information regarding whether or how DTM assessed the diminished value of the DoD computers. If DTM's assessment overestimated the depreciation in value, it may have led to a larger than appropriate settlement. Similarly, "[s]ettlement offers and demands made

prior to the mediation conference" may provide insight into the relative strengths of the parties' bargaining positions and may inform the proper measure of damages.  *Id.*

Finally, Defendants no longer have a need to assess "Ms. Bravo's alleged statement to Margo Briggs concerning the non-renewal of the insurance policy," or, specifically, whether Ms. Bravo warned Ms. Briggs that Arch threatened not to renew the policy if DTM did not settle with DoD.  *Id.*  In accordance with Plaintiff's briefing on the subject, Plaintiff shall provide a written stipulation that he will not argue, in whole or in part, that DTM dissolved due to any failure to obtain insurance, and that his negligence claim is not premised on DTM's inability to secure insurance or any insurance company's refusal to provide insurance.

As to the final element (inability to secure the information via other means), the Court finds that Defendants have not shown that they cannot obtain information related to most of these topics from other sources.  First, it is true that due to DTM's recent bankruptcy and DoD's protection from subpoena, Defendants are in a unique situation in which there are few fact witnesses remaining that are available to attest to the arguments and facts raised during the settlement negotiations.  However, any party to the settlement conference would be able to attest to arguments raised by either side, DoD and DTM's beliefs about how DTM was reporting and how DoD was responding to reporting, how one might understand the electrical diagrams, and the timing of settlement demands.  As a person present at the settlement discussion, Mr. Randazzo is likely to be able to provide answers to these questions.

It is unclear whether Mr. Randazzo would know the steps that DTM took to "investigate the facts underlying the DoD claim and the damages alleged."  *Id.* at 15.  In order to balance Defendants substantial need for the information against the potential burden Ms. Bravo would experience in attempting to protect the work-product and attorney-client privileges, this Court

will grant a limited motion to protect.  *See* Fed. R. Civ. P. 26(c)(1) (if a court finds that there is good cause to "protect a party or person from . . . undue burden," it may "prescrib[e] a discovery method other than the one selected by the party seeking discovery").  The Court will permit Defendants to submit twenty-five interrogatories to Ms. Bravo regarding the steps DTM took to investigate the facts underlying the claim and the damages alleged.  Following Ms. Bravo's answers to these interrogatories, if Defendants are unsatisfied with Ms. Bravo's replies, Defendants may renew their motion to compel a deposition.

## IV.      Conclusion

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the Motion for Protective Order and **GRANTS** in part and **DENIES** in part the Motion to Compel. Defendants are ordered to supplement their Motion to Compel within fourteen days to indicate whether DoD has replied to their discovery requests.  Plaintiff is ordered to provide an affidavit indicating which documents not produced pursuant to a claim of attorney-client privilege reflect communications with counsel outside the presence of strangers and for the purpose of securing legal opinions or legal services.  Plaintiff is also ordered to provide all documents withheld pursuant to a claim of work-product protection to the Court for *in-camera* review.  In support of said claim, Plaintiff shall provide an affidavit particularizing whether Plaintiff is asserting fact work-product or opinion work-product protection.  Finally, Plaintiff is ordered to provide a written stipulation that he will not argue, in whole or in part, that DTM dissolved due to any failure to obtain insurance, and that his negligence claim is not premised on DTM's inability to secure insurance or any insurance company's refusal to provide insurance.

Defendants are permitted to depose Mr. Randazzo regarding the arguments and facts raised during the settlement and to propound twenty-five interrogatories to Ms. Bravo regarding

what efforts DTM took to investigate the facts underlying the DoD claim and the damages

alleged.


March 31, 2015                                    _____/s/_____
                                                 Charles B. Day
                                                 United States Magistrate Judge

CBD/sdh